**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

MICHAEL C. SHERIDAN, *on behalf of
Himself and all others similarly situated*,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 5:23-cv-00616

ALLY FINANCIAL, INC.,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending is Defendant Ally Financial, Inc.'s (hereinafter, "Ally") Motion to Dismiss [Doc. 13], filed January 11, 2024. On February 2, 2024, Plaintiff Michael Sheridan filed his Response in Opposition [Doc. 16]. Ally replied on March 4, 2024 [Doc. 17]. On March 27, 2024, Mr. Sheridan filed a Motion for Leave to File Supplemental Authority [Doc. 19] in support of his Response in Opposition [Doc. 16]. On April 5, 2024, Ally filed a Response in Opposition to Mr. Sheridan's Motion for Leave to File Supplemental Authority [Doc. 20], to which Mr. Sheridan replied on April 11, 2024 [Doc. 21]. On July 31, 2024, Ally filed a Motion for Order Staying Discovery Pending Resolution of its Motion to Dismiss [Doc. 29]. The matters are ready for adjudication.

**I.**

On September 18, 2023, Mr. Sheridan instituted this action on behalf of himself and all others similarly situated. [Doc. 1]. The First Amended Class Action Complaint ("Complaint") alleges Ally "is an industry-leading automobile lender, who regularly passes its collection costs for monthly loan payments to borrowers when they make their payments by telephone or online." [Doc. 10 ¶ 1]. Plaintiffs claim Ally nuzzles up to car dealers, inducing them

to assign their purchaser's financing to it. [*Id.* ¶ 12]. Ally's third-party payment processor ("TPPP") vendors collect payments online or by telephone. [*Id.* ¶ 13]. According to Ally, it uses ACI Pay ("ACI") as its TPPP for telephone payment transactions and CheckFreePay ("CFP") as its TPPP for internet payment transactions. [Doc. 14 at 5–6]. The TPPP charges Plaintiffs per-transaction service fees up to $4.00. [Doc. 10 ¶¶ 13, 20–21]. For online payments, Ally provides to the TPPP the consumer payors' "account number, address, and payment details." [Doc. 13-3 at 9, 11]. For payments by phone, the payors provide this information to the TPPP. [*Id.*].

Mr. Sheridan executed a Retail Installment Sale Contract ("RISC") in October 2022 to purchase a used 2015 Ford Expedition from Greenbrier Ford, Inc. (the "Dealer"). [Doc. 10 ¶ 18]. Thereafter, Ally purchased Mr. Sheridan's RISC from the Dealer, thereby binding itself to the interests and obligations contained therein. [*Id.* ¶ 19]. The contract terms of Mr. Sheridan's RISC contain no provisions entitling Ally or its TPPPs to assess service fees for any related transactions, be they scheduled, electronic, online, or telephone payments. [*Id.* ¶ 22; Doc. 13-1]. Mr. Sheridan further contends there is no controlling statute authorizing Ally to collect these Pay-to-Pay fees, either directly or indirectly, from its borrowers. [Doc. 10 ¶ 16]. Not only are there no statutes permitting these service fees, but Mr. Sheridan points to an express prohibition against service fees of this nature contained in the West Virginia Consumer Credit Protection Act ("WVCCPA"). [*Id.* ¶¶ 2, 17, 23–25]; *see* W. Va. Code §§ 46A-2-128(c), (d), (g). Nonetheless, Mr. Sheridan has paid service fees of $3.50 and $4.00 respectively when making his requisite monthly payments to Ally via internet and telephone. [*Id.* ¶¶ 20–21]. Plaintiffs contend Ally's practice of assessing these Pay-to-Pay fees absent statutory or contractual permission constitutes an "unfair or unconscionable" means of debt collection under West Virginia debt collection law. [*Id.* ¶¶ 2–3, 15–17, 22].

2

As a result, Mr. Sheridan asserts a non-exhaustive list of various, repeated violations under Article 2 of the WVCCPA as follows:

1. "[U]sing unfair or unconscionable means to collect a debt from Plaintiff in violation of West Virginia Code §46A-2-128;"

2. "[C]ollecting or attempting to collect collection fees or charges, in violation of West Virginia Code §46A-2-128(c);"

3. "[C]ollecting or attempting to collect fees, which are neither expressly authorized by any agreement creating or modifying the obligation or by statute or regulation, in violation of West Virginia Code §46A-2-128(d);"

4. "[U]tilizing fraudulent, deceptive, or misleading representations or means regarding Plaintiff's auto loan status in an attempt to collect a debt or obtain information regarding Plaintiff in violation of West Virginia Code §46A-2-127;"

5. "[R]epresenting that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation in violation of West Virginia Code §46A-2-127(g);"

6. "[F]alsely representing or implying the character, extent, or amount of a claim against a consumer in violation of West Virginia Code § 46A-2-127(d); and"

7. "[T]hreatening to take any action prohibited by Chapter 46A of the West Virginia Code or other law regulating the debt collector's conduct in violation of West Virginia Code § 46A-2-124(f)."

[Doc. 10 ¶¶ 40(a)–(g)]; *see* W. Va. Code §§ 46A-2-127 to -128; *see also* W. Va. Code § 46A-2-124(f). Mr. Sheridan seeks class certification, civil penalties, actual or compensatory damages, pre- and post-judgment interest at the proper rate allowed by law, reasonable attorney fees and costs, appropriate and necessary equitable relief, judgment against Ally on all claims, a declaration Ally's conduct is illegal, and "all other relief deemed just and equitable" as a result of Ally's alleged unlawful practices. [Doc. 10 ¶¶ 1–8].

On January 11, 2024, Ally filed a Motion to Dismiss the Complaint in its entirety with prejudice pursuant to *Federal Rule of Civil Procedure* 12(b)(6). [Doc. 13].

Specifically, Ally asserts the Complaint suffers from the following defects:

1. "fails to allege facts demonstrating that Ally or the [TPPPs] were engaged in debt collection," [Doc. 14 at 9], specifically citing Mr. Sheridan's failure to "allege that the installment at issue was due or owing at the time he made payments," [ *Id.* at 2];

2. "does not allege facts plausibly showing an agency relationship between Ally and third-party service providers," [*Id.* at 12], specifically citing Mr. Sheridan's failure to "allege that Ally itself charged or collected any fee in connection with the transactions at issue," [*Id.* at 3]; and

3. "does not plead facts demonstrating that Ally or its vendors made any misrepresentation," [*Id.* at 16], specifically citing Mr. Sheridan's failure to "plead and prove [pursuant to *West Virginia Code* section 46A-2-123] that he was the victim of a fraudulent, deceptive, or misleading statement," [*Id.* at 3], thereby failing to meet the standards of both *Federal Rules of Civil Procedure* 8(a) and 9(b).

In his Response in Opposition [Doc. 16], Mr. Sheridan contends (1) he clearly alleges that Ally is a debt collector as defined under *West Virginia Code* section 46A-2-122(d), (2) his theory of liability under the statute for indirect debt collection is "directly contemplated by the" WVCCPA, and (3) he sufficiently alleged a violation of *West Virginia Code* sections 46A-2-124 and 46A-2-127 [*Id.* at 12].

Ally replied to Mr. Sheridan's Response in Opposition maintaining its assertions. [Doc. 17 at 11].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge

4

a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within twenty-one days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.

### A. *Did Ally and its TPPPs Engage in Debt Collection?*

Ally asserts Mr. Sheridan fails to allege facts sufficient to support a finding that either Ally or its TPPPs engaged in debt collection: "[the] Complaint fails to allege the basic element of a WVCCPA claim -- namely, that Ally, ACI, or CFP were engaged in debt collection when Plaintiff voluntarily made the payments at issue." [Doc. 14 at 9]. Ally further asserts Mr. Sheridan "does not allege [] his payment was 'due or owing' at the time he made payments." [*Id.*].

The WVCCPA defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code § 46A-2-122(c). In turn, the WVCCPA defines "debt collector" as "any person or organization engaging directly or indirectly in debt collection." *Id.* § 46A-2-122(d). The statute specifies, "[t]he term [debt collector] includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims." *Id.* A "claim" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family, or household purposes[.]" *Id.* § 46A-2-122(b). When determining whether "the term 'debt collector' . . . include[s] a creditor collecting its own debts[,]" the Supreme Court of Appeals of West Virginia answered in the affirmative, explaining "'[d]ebt collector' is defined in terms that include any person or organization who engages in the collection of debts, regardless of whether that person or organization is itself the debt collector." *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 768, 266 S.E.2d 905, 908 (1980).

The West Virginia Court has consistently held "[t]he purpose of the [WV]CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995). The West Virginia Court has further specified, due to the WVCCPA's remedial nature, "we must construe the statute liberally so as to furnish and accomplish all the purposes intended." *Id.*; *see Chevy Chase Bank v. McCamant*, 204 W. Va. 295, 304, 512 S.E.2d 217, 226 (1998) ("[T]he WVCCPA is a remedial act designed to protect consumers from the unfair practices of creditors and, as such, should be liberally construed."); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 500 (S.D.W. Va. 2014) ("The West Virginia Supreme Court of Appeals has consistently stated that the WVCCPA is to be given a broad and liberal construction[] . . . ."); *see also Boczek v. Pentagon Fed. Credit Union*, No. 1:23-CV-43, 2024 WL 1288667, at *2 (N.D.W. Va. Mar. 26, 2024) (explaining WVCCPA definitions are to be interpreted broadly, especially at the 12(b)(6) stage).

### 1. "Debt Collection" and "Debt Collector" under WVCCPA.

The Complaint sufficiently pleads Ally is a "debt collector" engaged in "debt collection" for purposes of the WVCCPA. Mr. Sheridan executed a RISC in connection with his purchase of a personal vehicle, [Doc. 10 ¶ 18], his RISC was subsequently assigned to Ally, [*Id.* ¶ 19], and Ally collects monthly payments on that debt, [*Id.* ¶¶ 4, 13]. These facts alone plausibly allege Ally was engaged in "debt collection." W. Va. Code §§ 46A-2-122(b), (c); *see also Boczek*, 2024 WL 1288667, at *2 (holding that as "the lender and servicer of Plaintiff's automobile loan," defendant "engages in debt collection through the collecting of the monthly auto loan payments"). The West Virginia Court has specified, "'[d]ebt collector' is defined in terms that include any

8

person or organization who engages in the collection of debts." *Thomas*, 164 W. Va. at 767–68, 266 S.E.2d at 908. By virtue of establishing Ally was engaged in debt collection, Mr. Sheridan has likewise established Ally is a "debt collector" for purposes of the WVCCPA. *Boczek*, 2024 WL 1288667, at *2 (finding plaintiff's complaint "sufficient to support that [defendant] is a 'debt collector' and that it engaged in 'debt collection' when collecting the automobile loan payment").

### 2. Plaintiffs sufficiently established his payment was "due or owing."

Ally's argument that Mr. Sheridan failed to establish his payment was "due or owing" is unpersuasive and warrants little analysis. The Complaint pleads an outstanding debt pursuant to the RISC; if his payments were not "due *or* owing," he would have no obligation under the RISC to make further monthly installments. The RISC also provides a default may result in the debtor having to pay all he "owes" at once. The RISC adequately demonstrates an outstanding debt that, while perhaps not "due" all at once, is nevertheless "owing" until it has been satisfied. *See Boczek*, 2024 WL 1288667, at *2 (explaining "the 'claim owed' in the Complaint is [plaintiff]'s automobile loan and [] his legal claims arise 'from extra amounts collected from him by [defendant] on a duty to pay money based on his prior contact'").

### 3. Plaintiffs has sufficiently pled facts establishing Ally's TPPPs are engaged in debt collection.

Ally contends its TPPPs are not engaged in "debt collection." Both the WVCCPA and precedent suggest otherwise. The West Virginia Court has reasoned as follows:

> It would be incongruous to suggest that a creditor could evade the requirements of the statute by collecting his own debt in unconscionable fashion, while another would be held to account if it enlisted the service of a professional collector to pursue the same course of action.

*Thomas*, 164 W. Va. at 770, 266 S.E.2d at 909. It would likewise be incongruous to suggest Ally could evade the "threshold" requirements of the WVCCPA by enlisting a TPPP to collect its

9

debtors' monthly payments in unconscionable fashion, while another would be held to account if it pursued this same course of action itself. Ally seems to have enlisted the services of these TPPPs to provide additional avenues for its clients to make monthly payments. [Doc. 10 ¶ 2].

Ally advertises the TPPPs' services on its website as "Ways to pay." [Doc. 13-3 at 3, 9–10]. It thus is sufficiently alleged the TPPPs are engaged in debt collection on behalf of Ally for purposes of the WVCPPA. It has been adequately pled that Ally is a "debt collector" engaged in "debt collection." Further, it is alleged Mr. Sheridan owes a debt to Ally. [Doc. 10 ¶¶ 4, 18–22]. It is further apparent Ally has "hired a third party to make its payment collections on its behalf." [*Id.* ¶ 2]. And, as noted, Mr. Sheridan utilized these TPPPs to make his requisite monthly payments to Ally. [*Id.* ¶¶ 20–21]. Mr. Sheridan also paid service fees when utilizing these TPPPs. [*Id.*]. It thus appears Mr. Sheridan has plausibly alleged Ally's TPPPs are indirectly engaged "in the collection of claims owed . . . by a consumer" to Ally. W. Va. Code § 46A-2-122(c); *see also Boczek*, 2024 WL 1288667, at *2 (explaining defendant engaged in debt collection both when collecting monthly auto loan payments *and* when collecting the service fee).

B.   *Has Plaintiffs Plausibly Alleged His Agency Claim?*

Ally next asserts the "Complaint must be dismissed because Plaintiff does not allege facts plausibly showing an agency relationship between Ally and" the TPPPs. [Doc. 14 at 12]. It contends there are no allegations "Ally itself charged or collected any fee in connection with the transaction at issue." [*Id.* at 3]. Mr. Sheridan responds his "theory of liability is clear and straightforwardly plead: Ally is either profiting directly through this scheme of upcharging borrowers 1300% above the actual costs of the Pay-to-Pay transactions, or is profiting by negotiating a price with the" TPPPs [Doc. 16 at 10]. Mr. Sheridan further contends "Ally's practice of retaining a third party to process borrowers' Pay-to-Pay Fees and charging the service fee

10

through the vendor does not absolve it of liability under the statute when indirect debt collection is directly contemplated by the [WVCCPA]." [*Id.* at 9].

Ally relies on *Frantz v. Ace Hardware Corp.*, No. 1:15CV181, 2016 WL 1122086, at *5 (N.D.W. Va. Mar. 22, 2016), to suggest "'[a]n agency relationship exists [only] where one party (the principal) grants express or implied authority to another party (the agent) to represent the principal in dealings with third persons, creating a fiduciary relationship between the parties.'" [Doc. 14 at 13 (quoting *Frantz*, 2016 WL 1122086, at *5)]. Ally thus asserts Mr. Sheridan must plead the following information:

> 1) that Ally expressly or impliedly gave third-party service providers the authority to charge Ally customers a fee *on Ally's behalf* and the third-party payment providers agreed to act in that capacity as agents of Ally, and 2) that Ally exercised control over the actions of the third-party payment processors.

[*Id.* at 14]. Ally also charges Mr. Sheridan's lacks allegations Ally entered a contract with the TPPPs granting them authority to act on its behalf. [*Id.*]. There are multiple reasons the argument fails.

First, West Virginia law recognizes the principle of apparent authority. *See Frantz*, 2016 WL 1122086, at *5 ("West Virginia law also recognizes the principle of apparent authority, or 'apparent agency.'"). When a third party reasonably infers from the principal's conduct that an agent has the authority to act on the principal's behalf, the principal is estopped to deny the agency relationship. *See Gen. Elec. Credit Corp. v. Fields,* 148 W. Va. 176, 182, 133 S.E.2d 780, 783 (1963) (explaining "an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions"); *see also* Syl. Pt. 1, *Myers v. Summerville*, 90 W. Va. 486, 486, 111 S.E. 487, 487 (1922) ("The act of an agent within the apparent scope of his authority binds his principal."); *see also* Syl. Pt. 1, *General Elec. Credit*

*Corp*, 148 W. Va. at 176, 133 S.E.2d at 780) ("One who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship.").

Second, "[p]roof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." *Cassiday Fork Boom & Lumber Co. v. Terry*, 69 W. Va. 572, 572, 73 S.E. 278, 278 (1911); *see Frantz*, 2016 WL 1122086, at *6 ("Although control is a necessary element of agency, factual allegations explicitly demonstrating such control are not necessary for the [plaintiffs'] agency claim to survive [defendant's] motion to dismiss."). Therefore, "the question of whether an agency relationship exists is generally fact dependent." *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 155, 706 S.E.2d 63, 76 (2010); *see also Frantz,* 2016 WL 1122086, at *5 ("[A]gency may be inferred from the facts and circumstances, and the underlying conduct of the parties can be reviewed' to determine whether an agency relationship exists.") (internal quotation marks omitted)).

Analyzed under the foregoing standards, Mr. Sheridan alleges Ally has hired TPPPs to process monthly payments on its behalf. [Doc. 10 ¶ 2]. The TPPPs are advertised on Ally's website as "Ways to pay." [*Id.*; Doc. 13-3 at 9–10]. Debtors are charged a service fee when utilizing the TPPPs. [Doc. 10 ¶¶ 13, 20–21]. Mr. Sheridan has paid these service fees. [*Id*. ¶¶ 4, 20–21]. Moreover, for online payments, Ally provides to the TPPP the consumer payors' "account number, address, and payment details;" the payors provide the information if they opt to pay the TPPP by phone. [Doc. 16 at 10; Doc. 13-3 at 9, 11]. These allegations suffice to plausibly allege an agency claim. *See* Syl. Pt. 4, *Case v. Shepherd*, 140 W. Va. 305, 306, 84 S.E.2d 140, 141 (1954) ("Payment

of money to an agent, to be applied on a debt of the principal, is equivalent to payment direct to the principal, and, when paid to the agent, discharges the indebtedness to the extent of the payment.").

In the alternative, discovery is warranted to ascertain the extent to which, if at all, Ally is benefiting from the Pay-to-Pay fees. That development would suggest "some degree of control by the principal over the conduct and activities of the agent." *Davis v. DISH Network, LLC*, No. 3:18-1415, 2019 WL 5406241, at *7 (S.D.W. Va. Oct. 22, 2019) (quoting *Johnson v. New River Scenic Whitewater Tours, Inc.*, 313 F. Supp. 2d 621, 633–34 (S.D.W. Va. 2004)). The matter is not properly resolved at this stage of the litigation inasmuch as "'sorting out [this] relationship. . . is a factual matter that may be resolved by summary judgment following discovery, not by Rule 12(b)(6).'" *Frantz*, 2016 WL 1122086, at *6 (quoting *Pinnacle Mining Co., LLC v. Bluestone Coal Corp.*, No. 5:08-CV-00931, 2009 WL 15433867, at *2 (S.D.W. Va. May 29, 2009)); *see also Harper*, 227 W. Va. at 155, 706 S.E.2d at 76 (explaining where factual conflict exists regarding the existence of an agency relationship, jury resolution is warranted).

C.    *Does Plaintiffs' Section 127 Claim Meet the Heightened Pleading Standard?*

Next, Ally asserts Mr. Sheridan's "[s]ection 127 claim fails [] because he does not plead facts demonstrating that Ally or its vendors made any misrepresentation." [Doc. 14 at 16]. It contends Mr. Sheridan fails "to identify who made an allegedly false statement, when those statements were made, [] the content of the purportedly false statements[,] …[or] the third parties involved." [*Id.* at 17]. Ally also contends Mr. Sheridan's section 46A-2-124(f) claim must be dismissed for failure "to identify the purported 'threats' that either Ally or any third party made to the Plaintiff." [*Id.*].

*Federal Rule of Civil Procedure* 9(b) provides, *inter alia*, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The heightened pleading standard of Rule 9(b) applies to allegations that sound in fraud. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Rule 9(b) has four primary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of…. Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Id.* (cleaned up). To satisfy Rule 9(b)'s heightened pleading standard, plaintiffs must allege with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (cleaned up). In contrast, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

**1. Plaintiffs' WVCCPA section 127 claims sound in fraud.**

Mr. Sheridan alleges violations under *West Virginia Code* sections 46A-2-127,[1] 46A-2-127(d),[2] and 46A-2-127(g).[3] [Doc. 10 ¶ 40]. In support, Mr. Sheridan alleges Ally, through its TPPP(s), charged him a service fee to process his requisite monthly payments despite no express contractual or statutory permission to do so. [Doc. 10 ¶¶ 2–4, 13–16, 20–22, 25, 31].

In substance, Mr. Sheridan accuses Ally of misrepresenting to consumers its TPPPs were permitted to assess the Pay-to-Pay fees when processing monthly payments. [Doc. 10 ¶¶ 2–3]. Mr. Sheridan and similarly situated debtors trusted Ally's misrepresentation. [*Id.* ¶ 4]. They in turn paid these fees. [*Id.* ¶¶ 4, 20–21]. As pleaded, the allegations suggest the "gravamen of the alleged violation . . . is fraud, triggering Rule 9(b)." *Moore v. RoundPoint Mortgage Serv. Corp.*, No 2:18-cv-01222, 2018 WL 4964362, at *3 (S.D.W. Va. Oct. 15, 2018).

Viewed in that fashion, Mr. Sheridan has failed to meet Rule 9(b)'s heightened standard. He does not allege when or even how many times the alleged fraud occurred. Accordingly, the Court **GRANTS** Ally's motion to dismiss Mr. Sheridan's WVCCPA section 127 claims.

---

[1] Noting utilization of "fraudulent, deceptive, or misleading representations or means regarding Plaintiff's auto loan status in an attempt to collect a debt or obtain information regarding Plaintiff in violation of West Virginia Code §46A-2-127." [Doc. 10 ¶ 40].

[2] Accusing Ally of "falsely representing or implying the character, extent, or amount of a claim against a consumer in violation of West Virginia Code §46A-2-127(d)." [Doc. 10 ¶ 40].

[3] Charging Ally with "representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation in violation of West Virginia Code §46A-2-127(g)." [Doc. 10 ¶ 40].

D.      *Do Plaintiffs Adequately Plead the Threats, Coercion, or Attempted Coercion Necessary to Sustain a Section 124 Claim?*

Mr. Sheridan also putatively alleges a violation of W. Va. Code section 46A-2-124(f).[4] [Doc. 10 ¶ 40]. Ally contends Mr. Sheridan's section 124 claim must be dismissed for failure "to identify the purported 'threats' that either Ally or any third party made to [him]." [Doc. 14 at 17]. Section 46A-2-124 prohibits a debt collector from using threats, coercion, or attempted coercion to collect debts. W. Va. Code § 46A-2-124. The section contains a catchall provision prohibiting a debt collector from threatening "to take any action prohibited by this chapter or other law regulating the debt collector's conduct." *Id.*

The necessary, substantive allegations for threat or coercion are absent. [Doc. 10 ¶ 40(g)]. The word "threat" does not even appear in the Complaint beyond the pertinent statutory language. [*Id.* ¶ 40]. Accordingly, the Court **GRANTS** Ally's motion to dismiss Mr. Sheridan's WVCCPA section 124 claim.

### IV.

Based on the foregoing discussion, Ally's Motion to Dismiss [**Doc. 13**] is **GRANTED** to the extent of Plaintiff's claims under *West Virginia Code* sections 46A-2-127, 46A-2-127(g), 46A-2-127(d) and 46A-2-124(f), and **DENIED** as to its residue. Mr. Sheridan's Motion for Leave to File Supplemental Authority [**Doc. 19**] is **GRANTED**. The dismissed claims may be plead anew with sufficient allegations on or before **August 25, 2024**. Inasmuch as the Court has

---

[4] The subject statutory language prohibits "threatening to take any action prohibited by Chapter 46A of the West Virginia Code or other law regulating the debt collector's conduct in violation of West Virginia Code §46A-2-124(f)." [Doc. 10 ¶ 40].

now ruled, Ally's Motion for Order Staying Discovery Pending Resolution of its Motion to Dismiss [**Doc. 29**], is **DENIED AS MOOT**.

ENTER: August 13, 2024

Frank W. Volk
United States District Judge