UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MICHAEL C. SHERIDAN,
*on behalf of Himself and all others
similarly situated*,

      Plaintiff,

v.                                            CIVIL ACTION NO.  5:23-cv-00616

ALLY FINANCIAL, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Michael Sheridan's Motion for Class Certification [ECF 109], filed April 17, 2025. Defendant Ally Financial, Inc. ("Ally") responded in opposition [ECF 93], to which Mr. Sheridan replied [ECF 113].

### I.

On September 18, 2023, Mr. Sheridan instituted this action on behalf of himself and all others similarly situated. [ECF 1]. The Second Amended Class Action Complaint ("Complaint") alleges Ally "is an industry-leading automobile lender, who regularly passes its collection costs for monthly loan payments to borrowers when they make their payments by telephone or online." [ECF 39 at ¶ 1]. Ally's third-party payment processor ("TPPP") vendors collect payments online or by telephone. [*Id.* at ¶ 13]. Specifically, Ally uses ACI Pay ("ACI") as its TPPP for telephone payment transactions and CheckFreePay ("CFP") as its TPPP for internet

payment transactions. [ECF 108, Ex. F]. The TPPP charges Plaintiffs per-transaction service fees up to $4.00. [ECF 39 at ¶ 13].

Mr. Sheridan executed a Retail Installment Sale Contract ("RISC") in October 2022 to purchase a used 2015 Ford Expedition from Greenbrier Ford, Inc. (the "Dealer"). [*Id.* at ¶ 18]. Thereafter, Ally purchased Mr. Sheridan's RISC from the Dealer, thereby binding itself to the interests and obligations contained therein. [*Id.* at ¶ 19]. The contract terms of Mr. Sheridan's RISC contain no provisions entitling Ally or its TPPPs to assess service fees for any related transactions, be they scheduled, electronic, online, or telephone payments. [*Id.* at ¶ 22]. Mr. Sheridan further contends there is no controlling statute authorizing Ally to collect these Pay-to-Pay fees, either directly or indirectly, from its borrowers. [*Id.* at ¶ 16]. Not only are there no statutes permitting these service fees, but Mr. Sheridan points to an express prohibition against service fees of this nature contained in the West Virginia Consumer Credit Protection Act ("WVCCPA"). [*Id.* at ¶¶ 2, 17, 26–28]; *see* W. Va. Code §§ 46A-2-128(c), (d), (g). Nonetheless, Mr. Sheridan -- and 15,021 West Virginians -- paid service fees when making requisite monthly payments to Ally via internet and telephone. [*Id.* at ¶¶ 20–21; ECF 110 at 1]. Plaintiffs contend Ally's practice of assessing these Pay-to-Pay fees absent statutory or contractual permission constitutes an "unfair or unconscionable" means of debt collection under West Virginia debt collection law. [ECF 39 at ¶¶ 2–3].

As a result, Mr. Sheridan asserts a non-exhaustive list of various, repeated violations under Article 2 of the WVCCPA as follows:

1. "[U]sing unfair or unconscionable means to collect a debt from Plaintiff in violation of West Virginia Code §46A-2-128;"

2. "[C]ollecting or attempting to collect collection fees or charges, in violation of West Virginia Code §46A-2-128(c);"

3. "[C]ollecting or attempting to collect fees, which are neither expressly authorized by any agreement creating or modifying the obligation or by statute or regulation, in violation of West Virginia Code §46A-2-128(d);"

4. "[R]epresenting that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation in violation of West Virginia Code §46A-2-127(g);"

5. "[F]alsely representing or implying the character, extent, or amount of a claim against a consumer in violation of West Virginia Code § 46A-2-127(d); and"

6. "[T]hreatening to take any action prohibited by Chapter 46A of the West Virginia Code or other law regulating the debt collector's conduct in violation of West Virginia Code § 46A-2-124(f)."

[*Id.* at ¶¶ 43(a)–(c), (e)–(f)]; *see* W. Va. Code §§ 46A-2-127 to -128; *see also* W. Va. Code § 46A-2-124(f). Mr. Sheridan seeks class certification, civil penalties, actual or compensatory damages, pre- and post-judgment interest at the proper rate allowed by law, reasonable attorney fees and costs, appropriate and necessary equitable relief, judgment against Ally on all claims, a declaration Ally's conduct is illegal, and "all other relief deemed just and equitable" as a result of Ally's alleged unlawful practices. [ECF 39 at ¶¶ 1–8].

On March 7, 2025, Mr. Sheridan filed his Motion for Class Certification, seeking class treatment for the following group:

> All West Virginia consumers identified by the Defendant with a West Virginia mailing address (1) with an automobile loan securing a vehicle with a Contract and Garage State in West Virginia, (2) where the lender or assignee is Ally, (3) who paid a fee to ACI or CheckFreePay for making a loan payment by telephone or over the internet, by interactive voice recognition (IVR) or by other electronic means, from four years before the filing of the complaint through the date a class is certified.

[ECF 113 at 2].

## II.

"The class action device is 'an exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only.'" *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024) (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)). "The premise is that 'litigation by representative parties adjudicates the rights of all class members.'" *Id.* (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998)). A party seeking class certification must thus satisfy the four requirements of *Federal Rule of Civil Procedure* 23(a).

Rule 23 "contains an implicit threshold requirement that the members of a proposed class be readily identifiable[,]" commonly referred to as "ascertainability." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)) (internal quotation marks omitted); *Kadel v. Folwell*, 100 F.4th 122, 160 (4th Cir. 2024) (recognizing "an implicit requirement" that "members of a proposed class be readily identifiable.") (internal quotation marks omitted). As such, "class definitions must be written with specificity" to "provide proper detail to identify whether or not a prospective class member was injured and whether their claim coheres with the rest of the certified class." *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 681–82 (4th Cir. 2024). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *EQT*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). If, however, the class members are ascertainable, the certification inquiry continues to Rule 23(a), which provides pertinently as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the

4

>   claims or defenses of the class; and
>
>   (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Merely pleading compliance with these requirements is not enough; rather, 'the party [seeking certification] must present evidence that the putative class complies with Rule 23.'" *G.T.*, 117 F.4th at 202 (quoting *EQT*, 764 F.3d at 357).

In addition to the four Rule 23(a) criteria, a class proponent must fall under one of the three Rule 23(b) categories. Plaintiffs seek certification under Rule 23(b)(3), which authorizes a class action where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In other words, "Rule 23(b)(3) has two components: predominance and superiority." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). Rule 23(b)(3) sets forth the following factors to consider when deciding whether a class satisfies the predominance and superiority requirements:

>   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>   (D) the likely difficulties of managing a class action.

Fed. R. Civ. P. 23(b)(3).

A district court has "broad discretion in deciding whether to certify a class . . . ." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *In re Am. Med. Sys., Inc.*,

75 F.3d 1069, 1079 (6th Cir. 1996)). That discretion, however, "must be exercised within the framework of Rule 23." *Id.* "The party seeking class certification bears the burden of proof." *Id.* (citing *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981)). When evaluating whether class certification is appropriate, the Court conducts a "rigorous analysis" of the facts and arguments offered in support of class certification, which often "entail[s] some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). The Court may not, however, "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Rather, "[m]erits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*; *see also Thorn*, 445 F.3d at 319 (internal quotations and citations omitted) (explaining courts "must take a close look at the facts relevant to the certification question and, if necessary, make specific findings" relevant to certification "even if the issues tend to overlap into the merits of the underlying case.").

### III.

#### A.     *Ascertainability*

As a threshold matter, the Court must determine whether the proposed class members are ascertainable. As noted, Mr. Sheridan proposed defining the class as follows:

> All West Virginia consumers identified by the Defendant with a West Virginia mailing address (1) with an automobile loan securing a vehicle with a Contract and Garage State in West Virginia, (2) where the lender or assignee is Ally, (3) who paid a fee to ACI or CheckFreePay for making a loan payment by telephone or over the internet, by interactive voice recognition (IVR) or by other electronic means, from four years before the filing of the complaint through the date a class is certified.

[ECF 113 at 2]. Mr. Sheridan's proposed class definition is based on the spreadsheet provided by Ally in discovery. [ECF 109, Ex. A]. Specifically, Mr. Sheridan contends 15,021 West Virginians were assessed 127,255 Pay-to-Pay fees by ACI or CheckFreePay during the relevant time period. [ECF 110 at 1]. Ally challenges the spreadsheet Mr. Sheridan relies upon and claims it fails to identify whether the customer "actually paid a fee to the TPPPs, let alone which customers might have done so." [ECF 93 at 10]. Ally thus argues the class is not ascertainable inasmuch as the Court would be required to conduct an individualized inquiry of each transaction. [*Id.* at 11].

Ally produced precisely the information that Mr. Sheridan relies on in support of the proposed class definition. It is undisputed the spreadsheet identifies West Virginia accounts on which Ally received a payment through ACI or CFP. [*Id.* at 6]. It is also undisputed that each payment a customer makes through either of the TPPPs incurs a fee. [ECF 113, Ex. A]. Moreover, Ally has not proffered any evidence showing that anyone other than the account holder paid the fees. *See Career Counseling, Inc.*, 91 F.4th at 211–12 (finding ascertainability requirement was not met inasmuch as Defendant's proffered evidence established potential class members could have been using an alternative method of fax services than that identified in the proposed class). Ally's challenge regarding who actually paid the fees – once stripped down – goes to the merits of the claims.

The class definition is clear, objective, and based on readily identifiable criteria. The accompanying spreadsheet provides sufficient detail to identify class members who were injured in connection with the alleged wrongful conduct. As a result, determining class membership does not require individualized fact-finding. The proposed class is ascertainable.

B.     *Rule 23 Requirements*

The Court next analyzes whether the class Mr. Sheridan proposes satisfies numerosity, commonality, typicality, and adequacy of representation. He must also show that common questions of law or fact predominate over individual questions and that the class action is superior to other adjudicative methods. Fed. R. Civ. P. 23(b)(3). Ally challenges Mr. Sheridan's ability to satisfy the typicality, adequacy, and predominancy requirements.

### 1. Numerosity

Rule 23(a)(1) requires the class be of sufficient size that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone. *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (holding that "eighteen is a sufficiently large number to constitute a class in the existing circumstances" and noting that "[n]o specified number is needed to maintain a class action under Fed. R. Civ. P. 23"); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). However, "[a]s a general guideline, . . . a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (internal citation omitted). As noted, Mr. Sheridan identified 15,021 individuals that fulfill the proposed class criteria. Accordingly, the numerosity requirement is deemed satisfied.

## 2. Commonality and Predominance

The Rule 23(a)(2) commonality factor requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule is phrased in terms of common questions, '[w]hat matters to class certification is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *G.T.*, 117 F.4th at 202 (quoting *Wal-Mart*, 564 U.S. at 350). "A single common question will suffice, but it 'must be of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id*. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id*. (internal quotations omitted). "It is not enough that the class members have all suffered a violation of the same provision of law." *Id*. "Rather, all class members' 'claims must depend upon a common contention' that is capable of classwide resolution." *Id*. (quoting *Wal-Mart*, 564 U.S. at 350). Simply put, "[a] question is not common . . . if its resolution 'turns on a consideration of the individual circumstances of each class member.'" *Thorn*, 445 F.3d at 319 (quoting 7A Charles Allen Wright *et al.*, *Federal Practice and Procedure* § 1763 (3d ed. 2005)). "When determining whether commonality exists, the court must examine the precise nature of the class members' underlying claims." *Jonathan R. v. Justice*, 344 F.R.D. 294, 304 (S.D.W. Va. 2023) (citing *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014)).

As noted, Mr. Sheridan seeks certification pursuant to Rule 23(b), which requires common questions of law and fact predominate over questions affecting only individual members. The predominance requirement of Rule 23(b)(3) "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn*, 445 F.3d at 319 (internal citations omitted). Where commonality "requires little more than the presence of common questions of law and

9

fact[,]" predominance, as mentioned, "requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Id*. (internal citations and quotations omitted). Predominance thus "'tests whether the proposed class[] [is] sufficiently cohesive to warrant adjudication by representation.'" *Id*. (quoting *Gariety v. Grant Thorton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)).

Mr. Sheridan is pursuing this case as an alleged violation of various sections of the WVCCPA under the primary theory that the TPPPs were acting as Ally's agents when assessing Pay-to-Pay fees against consumers. Ally thus argues the central controversy in this matter is whether Mr. Sheridan can establish an agency relationship, which requires an individualized inquiry into each class member's belief and justifiable reliance of the TPPPs appearance of authority. [ECF 93 at 17]. Ally further contends that an individualized inquiry is required as to whether members are bound by arbitration agreements.[1] [*Id.* at 19–20]. Mr. Sheridan -- relying on the Court's prior Memorandum Opinion and Order [ECF 33] -- contends the test for apparent authority in West Virginia does not require proof of direct reliance. [ECF 113 at 8]. Rather, a plaintiff must show "the third person was 'entitled to rely' upon the agent's 'appearance' and his 'real authority.'" [*Id.*]. Nevertheless, Mr. Sheridan contends a finding of agency is not required for purposes of his claims inasmuch as the WVCCPA provides "express allowance for indirect debt collection." [ECF 113 at 10]; *see* W. Va. Code § 46A-2-122.

As previously noted, West Virginia law recognizes the principle of apparent authority. *See Frantz v. Ace Hardware Corp.*, No. 1:15-CV-181, 2016 WL 1122086, at *5 (N.D. W. Va. Mar. 16, 2022) ("West Virginia law also recognizes the principle of apparent authority, or

---

[1] This contention does not defeat Mr. Sheridan's commonality and predominance showing. Ally will have the opportunity during class administration to offer evidence showing that a class member is confined to an arbitration provision.

10

'apparent agency.'"). When a third party reasonably infers from the principal's conduct that an agent has the authority to act on the principal's behalf and relies thereon, the principal is estopped to deny the agency relationship. *See Gen. Elec. Credit Corp. v. Fields,* 148 W. Va. 176, 182, 133 S.E.2d 780, 783 (1963) (explaining "an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions"). Although the reliance prong of the apparent agency test is a "subjective molehill," its determination is made by "considering the totality of the circumstances." *Burless v. W. Virginia Univ. Hosps., Inc.*, 215 W. Va. 765, 777, 601 S.E.2d 85, 97 (2004); *see also Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 155, 706 S.E.2d 63, 76 (2010); *Gen. Elec. Credit Corp.*, 148 W. Va. at 181, 133 S.E.2d at 783 ("agency . . . may be inferred from facts and circumstances, including conduct."); *Frantz,* 2016 WL 1122086, at *5 ("[A]gency may be inferred from the facts and circumstances, and the underlying conduct of the parties can be reviewed to determine whether an agency relationship exists.") (internal quotation marks omitted)).

It is reasonable to conclude from the facts and circumstances that the class members relied upon Ally's representation that the TPPPs had authority to act on its behalf. In particular, the Welcome Letter Ally provided its consumers explicitly outlined the methods to submit payments on their loan, including those involving the TPPPs. [ECF 109, Ex. F]. Class members would not utilize the TPPPs but for this representation. Accordingly, the inquiry into apparent agency authority may be uniformly applied to all class members, as it involves examining the same legal principles and factual patterns across the class. Such determination is directly tied to Ally's liability and predominates any minor individualized inquiry. The requirements of commonality and predominance are satisfied.

### 3. Typicality

"The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co.*, 446 U.S. at 330. To meet this requirement, the claims of the named plaintiff must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As reiterated by the Supreme Court in *Dukes*,

> the commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13). Thus, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter*, 436 F.3d at 466 (quoting *Broussard*, 155 F.3d at 340). "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Id.* at 466. While the claims of the named plaintiffs need not be "perfectly identical" to the claims of the class members, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of actions." *Id.* at 467. Thus, "the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id.*

Typicality may be challenged when the class representative is subjected to a "unique defense" that is not applicable to the class as a whole. *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 302 (D. Md. 2022); 1 *Newberg and Rubenstein on Class Actions* § 3:45 (6th ed. 2024). "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification." *Beck v. Maximus, Inc.*, 457 F.3d 291, 300

(3d Cir. 2006); *see also Zetia*, 7 F.4th at 237; *Dukes*, 564 U.S. at 450 ("sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.").

Ally asserts Mr. Sheridan's claims are not typical inasmuch as he engaged in harmful conduct for the purpose of generating litigation and is thus subjected to the unique defense of unclean hands. [ECF 93 at 14]. It contends Mr. Sheridan "deviated from his normal course of conduct and split his payment to deliberately incur two separate fees charged by the TPPPs." [*Id.* at 13].

The defense of unclean hands "bars a party from receiving equitable relief because of that party's own inequitable conduct." *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000). To pursue a defense of unclean hands, the defendant must show they were injured by Plaintiff's conduct. *Lawler v. Gilliam*, 569 F.2d 1283, 1294 (4th Cir.1978); *Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc.*, 419 F. Supp. 2d 715, 727 (D. Md. 2006). Ally has failed to make that showing. In any event, its argument does not negate the fact that Mr. Sheridan's claims share the same essential characteristics of the class and are grounded on the same legal theory -- that Ally's practice of assessing Pay-to-Pay fees through its TPPPs absent statutory or contractual permission constitutes an "unfair or unconscionable" means of debt collection under the WVCCPA. Typicality is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that the class representative and class counsel adequately represent the class. These requirements "provide critical safeguards against the due process concerns inherent in all class actions." *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir. 2019); *Dukes*,

564 U.S. at 363 ("In the context of a class action predominantly for money damages[,] we have held that absence of notice and opt out violates due process."). Accordingly, "a district court may certify a class only if the class representative[s] 'will fairly and adequately protect the interests of the class.'" *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (quoting *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010)). To this end, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)); *Dukes*, 564 U.S. at 348–49.

This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) (quoting *Amchen*, 521 U.S. at 625)). Conflicts of interest that are "fundamental" and "go to the heart of the litigation" can prevent class certification. *Gunnells*, 348 F.3d at 430–31 (citations omitted). "A conflict is not fundamental when . . . all class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants].'" *Ward*, 595 F.3d at 180 (quoting *Gunnells*, 348 F.3d at 431). Additionally, conflicts that are "merely speculative or hypothetical" will not defeat a representative's adequacy. *Gunnells*, 348 F.3d at 430.

Ally's argument against the adequacy of Mr. Sheridan's class representation overlaps with the question of his typicality. Specifically, that Mr. Sheridan's credibility is called into question, which exposes class members to negative consequences. [ECF 93 at 14–15]. Inasmuch as the Court has rejected Ally's contentions on this point, it need not repeat the analysis. [ECF 115]. Mr. Sheridan will fairly and adequately protect the interests of the class. The proposed class thus meets all the certification requirements under *Federal Rule of Civil Procedure* 23(a).

### 5. Superiority

Rule 23(b)(3) requires that class action "be superior to other available methods for the fair and efficient adjudication of the controversy" so as to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citation and quotation marks omitted). Mr. Sheridan contends a class action is the superior method for resolving this action given that the allegations of such a large group of individuals center on the same WVCCPA claims. Moreover, he says, there would be a lack of relief for West Virginia consumers due to the lack of knowledge of the claim's existence and the costs incurred in individual litigation.

As noted, Mr. Sheridan contends the class is comprised of 15,021 West Virginians. Joinder of that many claims would be impracticable and unwieldly. Moreover, Ally's liability is a common question that would be inefficient to continuously litigate and risk nonconformity in decisions. Pursuing this matter as a class action is superior to any other method available.

### IV.

Based on the foregoing discussion, Mr. Sheridan's Motion for Class Certification **[ECF 109]** is **GRANTED**

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER:    July 22, 2025

Frank W. Volk
Chief United States District Judge

15